## SHERER AND NICHOLS v. COLLINS.

Judgment creditors of B. cannot by writ of error, remove into this Court the judgment of A. against B.

In Error. Submitted without argument.

*Wm. Halsted, for plaintiffs in error.*
*Jos. C. Potts, for defendant.*

HORNBLOWER, C. J.   Collins the defendant in error, having found materials and bestowed work and labor in and about the erection of a certain paper mill, belonging to the Phœnix Manufacturing Company, filed his claim therefor in the Clerk's office of the county of Hunterdon, under, and within the period prescribed by the act, commonly called the lien law; (*Elmer's dig.* 338.)

Within one year after the work was done, Collins sued the Company for the amount of his claim, in an action of *indebitatus assumpsit ;* and in May term, 1838, of the Hunterdon pleas, recovered a judgment in that suit, for four hundred and ninety-nine dollars and thirty-two cents, being twenty-one dollars and fifty cents more than the amount of the claim filed by him against the Company.—Upon that judgment, execution was issued, and the paper mill, in which all the property of the Phœnix Manufacturing Company consisted, was levied on and sold.

Sherer and Nichols, execution creditors of the said Company, insisting, that the sum of one hundred and eighty-five dollars and sixty-seven cents, part of the sum of four hundred and ninety-nine dollars and thirty-two cents, for which, Collins recovered judgment against the said Company, was for work done by him on the *race way*, and not on the *mill*, and that he had no lien on the mill, for the amount thereof; applied to the common pleas of Hunterdon, for a rule on the sheriff to retain in his hands, the money raised on Collins' execution, subject to the order of *that* court.   Afterwards it was agreed in writing between the parties, that the sheriff should retain in his hands, only the said sum of one hundred and eighty-five dollars and sixty-seven cents, subject to the opinion of *this* Court, upon a case stated between the parties, and to be brought here as upon a writ of Error by Sherer and Nichols, plaintiffs in error, and Collins defendant in error ; and that the following questions should be submitted for our consideration—viz :

1. Have Sherer and Nichols, a right as judgment creditors of the Phœnix Company, by writ of error, to bring into review before this Court, the judgment obtained by Collins against the said Company.

2. Ought the judgment in favor of Collins, to have been for all that was due to him from the Phœnix Company, or only for so much of his demand as constituted a lien upon the mill, under the provisions of the lien law?

3. Had Collins a lien upon the *mill*, for materials found, and work and labor done by him, in the erection of the *tail-race?*

The first question above stated, is answered in the negative, fully and conclusively by the unanimous opinion of this Court, in the case of *Black* v. *Kirgan*, 3 *Green's R.* 45. And this answer I suppose, settles the whole case, and judgment must be given for the defendant, with costs.

As, however, it may be the desire of the parties, to have the opinion of this Court upon the other matters, for the final settlement of their differences, I have no objection to intimate my views upon the other points submitted : and,

1. I think the proceedings for the enforcement of a lien, under the lien law, whether by action of *assumpsit*, or by *scire facias*, must be specifically and exclusively for the moneys for which the statute gives the plaintiffs, such lien.

The statute gives a lien absolutely for the period of two years : but, if the creditor files his claim within six months, and commences a suit within one year after the work done, or materials found, then the lien continues indefinitely, and until the creditor is satisfied. In the mean time, other incumbrances on the property may be created by mortgages or judgments, or both,—or it may pass into other hands by sale and conveyance. If then the lien creditor, comes upon the property by a judgment at large, including debts due him that were not liens under the statute, how is that judgment to be liquidated? The intermediate incumbrancers, or purchasers, hold subject to the *lien* only, and are only bound to satisfy the lien money, and no more.

Besides, the second section of the act, (*Elmer's dig.* 338.) gives the lien creditor, his election to sue by action at law, or by *scire facias;* and the execution is to go against the building or buildings on which the *lien* is given, and the land upon which they

are erected. This shows that the legislature contemplated a proceeding for the specific lien debt, exclusively. A *scire facias* certainly could only be to show cause, why the *lien* money should not be levied of the property bound by the lien. As to the third, and last question, whether the plaintiff had a lien on the mill and the lands whereon it was built, for the materials and work found and done on the race-way, it must depend upon facts, not disclosed by the case. If the mill and the race were all one entire erection, and put up at the same time, I do not see why, upon a liberal construction of the statute, considering it as a remedial one, the mill and lands should not be bound for excavating and walling up the race-way, as a part and parcel of the mill. But upon this point, I do not give any definitive opinion.

FORD, J.    Charles Collins brought an action of assumpsit in the court of common pleas, of the county of Hunterdon, against the Phœnix Manufacturing Company ; and declared for work and labor in building the Company's mill at Trenton, (" *Pro ut* lien filed "), also for materials found for it, (" *Pro ut* lien filed "), and on the usual money counts. The Company filed several pleas, which they afterwards withdrew, and thereupon, the plaintiff took a regular judgment by default, for four hundred and ninety-nine dollars and thirty-two cents. A writ of error is sued out by William Sherer and John Nichols, as creditors of the Company. If they can maintain a right to this writ, upon a judgment in which they are no parties, nor even named in the record, it cannot be done by the common law, for therein it is fully settled, that " no person can bring a writ of error to reverse a judgment, who was not a party, or privy to the record." *Bac. Ab. Error. B.* If they have it at all, it must be given by the statute respecting lien, passed on the 3d of March, 1835, (*Pamp. page* 148.) Now this statute provides, that every building shall be subject to debts for work done, and materials furnished, in the construction of it ; and that if it shall not sell for money enough to satisfy all such debts, then each creditor shall receive, out of the money arising from such sale, in proportion to his just demand ; provided, his claim be filed in the Clerk's office, within six months from the time of doing the work, or furnishing the materials ; and an action be commenced for it, within one year after the work shall

have been done, or the materials furnished; and that each creditor may proceed against the owner, his executors and administrators, by the usual process, or by *scire. facias;* and if judgment be had thereon, execution shall issue against the building and the land on which it shall be erected. Such are the principal provisions of the act, which was intended by the legislature, to be executed at law, by the "like proceedings as are had in personal actions for the recovery of debts." Each creditor must have his claim established by a judgment at law, in an action commenced within a year from the time his cause of action accrued, before the Court can possibly *divide the fund,* by decreeing to each, a sum proportioned to his demand. There may be fifty creditors suing these transitory actions, many of them in different courts, and the statute does not prescribe which of them shall decree the dividend, and proportion. Will this jurisdiction belong to that court, under whose process, the property may have been sold, and the money brought in by the officer; or, to that one which shall first assume to settle it? Certain it is, that the act confers no authority on this Court, to decree such dividend on a writ of error. Even a special authority, exercised by the Common Pleas, under a statute, and not according to the course of the common law, could not perhaps be reviewed on a writ of error or otherwise than by *Certiorari;* but as neither common law nor statute, gives this writ, on a judgment to persons neither party nor privy to the record, I am clear that it will not lie, and that this writ of error must be quashed.

DAYTON, *Justice,* stated that he had prepared an opinion upon the several points involved in this case; but the difficulties, not to say impossibilities, of carrying the act of *March* 3, 1835, into execution, by *fair judicial* construction, were so great, that he was compelled to rest his opinion upon the first point taken: to wit, that Sherer and Nichols had no legal right to disturb or review the verdict, upon the ground stated. And for this position, he relied on the latter authorities in this Court; no question, of their correctness, having been made.

WHITE, J. concurred, NEVIUS, J. absent.

*Judgment for defendant in Error, with costs.*